FILED

Randall Sousa
*Pro Se Plaintiff*
101 N. Fifth Street, # 1608
Richmond, VA 23219
Tel: (804) 372-7092
Email: randallsousa@gmail.com

2021 NOV 26 P 12: 24

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF VIRGINIA – ALEXANDRIA DIVISION

| | |
|---|---|
| RANDALL SOUSA,<br><br>Plaintiff,<br><br>v.<br><br>CIRCUIT COURT OF FAIRFAX COUNTY and WILLBERG TEDDY CHAPILLQUEN<br><br>Defendants. | Case No.: 1:21-cv-01304(TSE-JFA)<br><br>**VERIFIED COMPLAINT**<br><br>1. Declaratory Relief (Violation of Fifth Amendment – Due Process Clause)<br>2. Declaratory Relief (Violation of Eighth Amendment – Excessive Fines Clause) |

Plaintiff, Randall Sousa, by verified complaint, hereby states his causes of action against Defendants Circuit Court of Fairfax County and Willberg Teddy Chapilliquen (collectively "Defendants") as follows:

## PARTIES

1. Randall Sousa ("Sousa" or "Plaintiff") is an adult resident of the Commonwealth of Virginia and was at all times relevant residing therein.

2. Defendant Circuit Court of Fairfax County ("Fairfax") is a local unit of government operating and existing under the Constitution and laws of the Commonwealth of Virginia.

3. All acts and omissions of Fairfax's employees, agents, associates, partners, parents, or subsidiaries as alleged herein occurred while they were acting within the course and scope of their duties and Fairfax is therefore responsible to Plaintiff under the doctrine of vicarious

liability and/or other doctrines.

4. Defendant Willberg Teddy Chapilliquen ("Willberg") is an adult resident of the State of Maryland and was at all times relevant residing therein.

5. All acts and omissions of Willberg's employees, agents, associates, partners, parents, or subsidiaries as alleged herein occurred while they were acting within the course and scope of their duties and Willberg is therefore responsible to Plaintiff under the doctrine of vicarious liability and/or other doctrines.

## JURISDICTION

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 42 U.S.C. § 1988.

7. This Court also has jurisdiction by way of 28 U.S.C. § 1343(a)(3) and 1343(a)(4) which authorizes federal jurisdiction of claims to enforce civil rights guaranteed by the United States Constitution.

8. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

9. This action seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

10. Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

11. At the time of the facts giving rise to this Complaint, Sousa was an attorney who had been licensed to practice law in the Commonwealth of Virginia for fewer than 900 days.

12. As a native Spanish speaker whose parents escaped from Cuba, Sousa had a desire to provide extremely affordable legal services to an underrepresented Latino community in Northern Virginia. In so doing, however, Sousa soon discovered that word of his services began to spread rapidly, and before long, over one hundred people would arrive at his office each week

in search of legal assistance from matters ranging anywhere from criminal defense to employment to construction disputes to family and matrimonial matters to even a few wills and trusts. The door was open to anyone in need of assistance—irrespective of their ability to pay full price. The dire need for legal services in an economically depressed Latino community was so overwhelming, it required Sousa to receive clients Monday through Sunday.

13. Relevant to the instant claim is Sousa's representation of Ms. Sara Chapilliquen ("Sara") in the Matter of Chapilliquen v. Chapilliquen.

14. On or around August 2, 2018, Sara, a Bolivian-born, non-native speaker, presented herself at Sousa's office for a divorce consultation after receiving a divorce complaint from her then-husband, Willberg. The Complaint had been filed in Fairfax.

15. When Sara arrived at Sousa's office, she was in significant emotional distress, describing herself as a woman who had never known or been with another man, and now, her husband was cutting her off financially and leaving her for a younger woman.

16. During the consultation, Sara divulged a number of troubling and abusive elements of her marriage, including that throughout the entire course of their marriage, Willberg failed to make the required financial disclosures to his wife concerning marital, non-separate property and assets. Not only did Willberg fail to make the necessary financial disclosures, but he was actually taking steps to conceal the existence of these assets from Sara.

17. In light of her circumstances, as well as her outward distress, Sousa believed himself duty-bound to provide Sara some measure of representation irrespective of her ability to pay. To that end, during the course of his representation of Sara, Sousa received one payment of $5,000 from Sara's son about one month after Sara signed the retainer. Other than that, Sousa received no further payment for his representation over the course of eleven (11) months.

18. Because Sara was ignorant of her husband's financial resources, Sousa presumed that, like the vast majority of couples seeking a divorce, the matter could be handled without extensive litigation or the need for an actual trial.

19. Shortly after noticing his appearance in the case, Sousa realized that Willberg's counsel, Erin Barr ("Barr"), would not be amenable to what Sousa believed to be reasonable, equitable settlement discussions. Barr is an attorney licensed to practice law in the Commonwealth of Virginia, and at the time of the facts giving rise to this complaint, was employed at the firm Pikrallidas & Associates.

20. Sousa explained to Barr that her client's offers for settlement were made in bad faith because Sara was still entirely unaware of the couple's marital assets, and thus could not make an informed decision on whether the settlement offer was fair. After quickly giving up on serious settlement discussions, Barr decided that the next best approach was to aggressively litigate the matter.

21. As a result of the aggressive tactics of opposing counsel, Sousa started to get the feeling that Willberg held significantly more assets than Sara was aware of. And if such were indeed the case, uncovering and analyzing the origins of any secreted assets would require additional funds—which Sara could not afford. Therefore, on November 15, 2018, Sousa filed a Motion for Temporary Attorney's Fees which was supported by an affidavit from Sara. (Exhibit 1 – Mot. for Temp. Attorney's Fees)

22. Attached hereto as Exhibit 1 is a true and correct copy of Sara's Motion for Temporary Attorney's Fees and Supporting Affidavits.

23. In the affidavit, Sara affirmed under oath that "[t]hroughout my marriage to my husband, Willberg Chapilliquen, I have been kept in the dark about our finances and have never had

access to our bank accounts or been aware of precisely how much money we were earning or the assets that had been accumulated during the course of our marriage." (Ex. 1 at p. 5)

24. Sara further affirmed that "[i]t is my belief that Willberg has kept me in the dark about our finances and his business holdings in order to be able to divorce me without having to being subject to the requirements of equitable distribution." (*Ibid.*)

25. When Sara's Motion for Temporary Attorney's Fees came before *the carousel of one of the nine (9) separate Fairfax County Circuit Court judges who presided over the matter of Chapilliquen v. Chapilliquen*, the motion was denied.

## I.   RELEVANT DISCOVERY PROCEEDINGS

26. After being propounded with discovery, Sara became reluctant to continue engaging in the legal process of divorce. For example, when Sara was sent a Spanish version of her husband's discovery requests, she would not respond. When Sousa's clerks would email or text Sara asking her specific questions, she would either fail to respond or claim to not know the answer.

27. As a result of Sara's failure to provide the necessary information, Sousa simply served opposing counsel with a litany of objections. In response, Barr filed a motion to compel.

28. After a February 8, 2019, hearing on the motion to compel, Fairfax ordered Sara, not Sousa, to provide full and complete discovery responses. (Exhibit 2 – 2/8/19 Order)

29. Attached hereto as Exhibit 2 is a true and correct copy of the February 8, 2019, Order.

30. Subsequent to the issuance of the 2/8/19 Order, Sousa contacted Sara and instructed her to appear in person at his office to answer discovery, and that before doing so, she procures all the documents she had in her possession which might be responsive to Willberg's requests.

31. During this discussion, Sara disclosed that she was emotionally unable to engage in the

divorce proceedings, and that she was unable to come to Sousa's office because she was out of the country visiting family.

32. On March 1, 2019, Barr filed another motion to compel with an accompanying request for sanctions.

33. That same day, Sousa contacted Sara and commanded that she appear in person to answer discovery on Saturday, March 2, 2019, and to bring every single document in her possession which might be responsive to Willberg's discovery requests.

34. Upon appearing in Sousa's office, Sara provided over 300 pages worth of banking and financial records. Yet, when she sat down to go over Willberg's interrogatories, Sara claimed, persuasively, that she did not know the answer to many of the questions being asked. The reason why Sara's ignorance was persuasive was because she had disclosed, under penalty of perjury, that Willberg had kept her completely in the dark about much of their marital assets. (Exhibit 1 at pp. 5–6).

35. Without the ability to obtain a full and substantive response from Sara, Sousa served a litany of objections to Willberg's interrogatories, but did provide some substantive responses which were derived from Sousa's review of Sara's document production. Many of Sara's responses which claim lack of knowledge were accompanied by the statement that her "lack of knowledge or information is a product of [Willberg's] bad faith refusal to disclose assets or liabilities rightly belonging to [Sara]." Indeed, with respect to the interrogatories, Barr acknowledged that Sara provided partial, albeit incomplete responses, and this is precisely why Barr later sought an order overruling Sara's objections.

36. Although Sousa served responses or objections to each and every one of Willberg's discovery requests, Barr once again moved to compel. This time, for an order overruling the

objections and to obtain more complete responses.

37. On April 26, another one of the nine (9) judges to administer the Chapilliquen divorce matter issued an order overruling the objections and, according to Barr, "[d]efendant was ordered to provide full and complete responses by May 3, 2019." (Exhibit 3 – Trial Tr. at 14:3-7)

38. Attached hereto as Exhibit 3 is a true and correct copy of the June 11 Trial Transcript from Chapilliquen v. Chapilliquen.

## II. ERIN BARR'S UNTIMELY & INSUFFICIENTLY NOTICED MOTION IN LIMINE

39. The matter of *Chapilliquen v. Chapilliquen* had been set for a two-day trial scheduled to begin on June 11, 2019, in the Circuit Court of Fairfax Circuit, the Honorable David Bernhard ("Judge Bernhard"), presiding.

40. On June 4, 2019, seven days prior to trial, Barr filed an evidentiary motion in limine without noticing the motion or filing a praecipe. (Exhibit 4 – Written Motion in Limine)

41. Attached hereto as Exhibit 4 is a true and correct copy of Attorney Barr's June 4, 2019, motion in limine.

42. The motion in limine sought to exclude Sara from providing any testimony, introducing any witnesses, or introducing any exhibits in her case-in-chief. It further sought relief in the form of all costs and attorney's fees "incurred in bringing this action" because Sara had failed to provide "full answers to interrogatories and responses to requests for production." (Exhibit 4 at pp. 1-2). As a point of reemphasis, the motion was *not noticed* for a hearing, and Barr admitted as much under oath in a later proceeding.

43. Pursuant to the Scheduling Order, as well as Va. Sup. Ct. Rule 1:18B(VII), absent leave of court, any motion in limine which requires argument exceeding five minutes must be duly noticed and heard before the day of trial.

44. Despite attempting to prevent Sara from presenting her entire case-in-chief at trial, Barr fancifully believed that the motion could be argued in its entirety in less than 5 minutes.

### III.   RELEVANT TRIAL PROCEEDINGS IN FRONT OF JUDGE BERNHARD

45. On the day of trial, Barr opened by moving in limine to exclude Sara's ability to present any evidence or testimony in her case-in-chief. (Exhibit 3 at 28:2–29:10)

46. For another seven pages of transcript, Sousa provides a rebuttal argument to Barr's opening. (*Id.* at 29:14–36:3)

47. Instead of issuing a ruling on the motion, Judge Bernhard left the door open, and did not even provide Barr with the chance to respond to Sousa's rebuttal. Instead Judge Bernhard stated he "may restrict what evidence ends up before the Court, but the Court will do what the evidence calls for." (*Id.* at 36:8-10)

48. Halfway through the proceedings, the argument over Barr's motion in limine comes up again. (*Id.* at 195) As he had before, Judge Bernhard did not issue a definitive ruling, and instead stated that "we'll deal with it as it comes up." (*Id.* at 198:11–5)

49. A few moments later, Bernhard brings up the motion in limine again by explaining the issue facing the Court: "The question is whether she can testify in light of the discovery responses…Now, the question is, we have interrogatory twenty-one, presumably her testimony would be as to the factors, and there's no…[t]here's no answer here." (*Id.* at 206:17–207:12)

50. Over the course of the next fifteen (15) pages of transcript, Sousa provides further argument in opposition to Barr's motion in limine. (See, *Id.* at 207:13–222:23)

51. During his argument, Sousa expressed that to his recollection, Sara had come in and provided additional responsive discovery information to his Spanish fluent law clerk. He therefore wanted an opportunity to continue the matter in order to "find that proof and bring it

tomorrow...and if I don't have it, Your Honor, I'll be the first to say I don't have it." (*Id.* at 209:8–17)

52. Sousa made clear that if he was going to make the representation that supplemental discovery responses were actually provided to opposing counsel, "I think an opportunity to go look and bring it is reasonable, Your Honor, especially at this late hour in the day." (*Id.* at 210:24–211:5)

53. Judge Bernhard continued to needle Sousa by pressing him for an answer as to the precise time when Sara provided supplemental discovery responses. Sousa's response was crystal clear: "I don't recall and I don't like to make misrepresentations, and I don't like to lead the Court wrong, so what I do like to ask is a little leeway at 4:30 in the afternoon." (*Id.* at 216:17–217:2)

54. After hearing what was clearly over five minutes' worth of argument from Sousa, Judge Bernhard then asked to "hear from opposing counsel." (*Id.* at 222:24–223:3)

55. Finally, on page 226 of the transcript, Bernhard issued the following order as to the motion in limine: "I'm not going to permit her to testify because there no evidence that she responded to interrogatory twenty-one." (*Id.* at 226:11–13)

56. It should be noted that the motion in limine sought not merely to limit evidence, but also an award of "all fees and costs, including attorney fees and translator costs, incurred in bringing this action." (Exhibit 4 at p. 2) Consequently, the amount of time dedicated to arguing the motion in limine's request for attorney's fees spilled over spilled over into Barr's "closing" argument.

57. When Barr began her argument on fees, Judge Bernhard instructed her to make her argument for fees "as part of closing." (Exhibit 3 at 235:2–7)

58. At the conclusion of the hearing, Judge Bernhard denied Sousa's request for a

continuance, but also told Sousa that "if you come up with compelling evidence that you provided discovery, I will consider reopening the evidence, but for now…I'm not persuaded that discovery was answered[.]" (*Id.* at 275:2–10)

## IV. **JUDGE BERNHARD'S JULY 30 SANCTION ORDER**

59. On July 30, 2019, Judge Bernhard issued a "Letter Opinion," (the "July 30 Order") which has roundly been described as one of the most scathing professional reprimands in the history of Virginia jurisprudence. In the July 30 Order, Judge Bernhard needlessly attacked and mocked the intelligence, professionalism, experience, and character of a newly minted member of the Virginia Bar who had been practicing for less than 900 days.

60. After waxing poetic for 20 pages regarding irrelevant and inapplicable legal authority, Judge Bernhard sanctioned Sousa personally in the amount of $11,000 under Virginia Supreme Court Rule 4:12(d) and Virginia Code § 8.01-271.1. (Exhibit 5 at p. 20).

61. Attached hereto as Exhibit 5 is a true and correct copy of the July 30, 2019, Order.

62. As explained below, the July 30 Order suffers from three fatal constitutional infirmities.

## V. **THE JULY 30 ORDER WAS ISSUED IN VIOLATION OF DUE PROCESS**

63. The Fifth Amendment provides that "[n]o person shall…be deprived of life, liberty, or property, without due process of law[.]"

64. Likewise, the Due Process Clause of the 14th Amendment provides that "[n]o state shall deprive any person of life, liberty, or property, without due process of law."

65. Article I, Section 7 of the Virginia Constitution also separately prohibits a person from being "deprived of life, liberty, or property without due process of law."

66. These due process guarantees have been interpreted to have both procedural and substantive components. The Fourteenth Amendment to the United States Constitution's

substantive Due Process guarantee protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." [*Palko v. Conn.*, 302 U.S. 319, 325 (1937)]. These fundamental rights include those guaranteed by the Bill of Rights, as well as certain liberty and privacy interests implicitly protected by the Due Process Clause. [*Washington v. Glucksberg*, 521 U.S. 702, 720-721 (1997)]. Substantive due process also protects against government conduct that "shocks the conscience," even where the conduct does not implicate any specific fundamental right. [See *United States v. Salerno*, 481 U.S. 739, 746 (1987)].

67. The procedural Due Process clause of the Fourteenth Amendment also protects and encompasses a guarantee of fair procedure. [*Zinermon v. Burch*, 494 U.S. 113, 125 (1990)]. "In the context of procedural due process claims, 'the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." [*Ibid.*]

68. Here, the July 30 Order violated Sousa's Constitutional right to due process because the penalties imposed in the Order were imposed in the absence of adequate procedural safeguards.

69. More specifically, the sanctions imposed by Judge Bernhard were precipitated by "the request by Plaintiff, Mr. Willberg Teddy Chapilliquen, for an award of attorney's fees." This request for relief was made in Willberg's motion in limine. (See Exhibit 4) Consequently, Judge Bernhard's determination of whether to impose attorney's fees was necessarily part and parcel of the motion in limine itself—a motion which, as demonstrated in the transcript of proceedings, took much longer than 5 minutes to argue. (See, Exhibit 3 at pp. 28-36, 198-226)

70. Absent leave of court, any motion in limine which requires argument exceeding five minutes must be duly noticed and heard before the day of trial (See, Va. Sup. Ct. R. 1:18B(VII))

71. Because Willberg's motion in limine required argument exceeding 5 minutes, the motion was required to have been properly noticed and heard before the actual day of trial.

72. However, as alleged herein at ¶¶ 39-44, the motion was neither properly noticed, nor heard before the day of trial. Instead, the motion was heard during the actual trial itself. More importantly, the motion did not seek attorney's fees from Sousa, but from Sousa's client, Sara.

73. Because Sousa was not provided adequate notice in accordance with the minimum requirements of Va. Sup. Ct. R. 1:18B, the July 30 Order was issued in derogation of Sousa's Constitutional right to due process and is therefore void.

## VI.   THE JULY 30 ORDER VIOLATES THE EIGHTH AMENDMENT

74. The Eighth Amendment to the U.S. Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

75. The United States Supreme Court has held that the Excessive Fines Clause of the U.S. Constitution applies to the States. [See *Hall v. Florida*, 134 S. Ct. 1986, 1992 (2014)].

76. The Excessive Fines Clause, "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." [*R.L. Austin v. United States*, 509 U.S. 602, 609-10 (1993)]. "The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law." (*Id.* at 610).

77. Thus, when a sanction has a remedial purpose, but also has a retributive or deterrent purpose, the Eighth Amendment attaches.

78. Once the Eighth Amendment attaches, that is, once a portion of the civil sanction is deemed punitive, a separate analysis must be undertaken to determine whether the punishment is repugnant to the Cruel and Unusual Punishment Clause. [*United States v. Real Property: 835 Seventh St.*, 820 F.Supp. 688, 690 (N.D.N.Y. 1993)]

79. A punitive civil penalty will be found constitutionally excessive only if the fine is "grossly disproportional to the gravity of [the] offense." [*United States v. Bajakajian*, 524 US 321, 334 (1998)]. In other words, the fine must bear some relationship to the gravity of the offense that it is designed to punish.

80. The touchtone inquiry in determining the gravity of the offense focuses on "the individualized culpability of the [party being fined.]" [*United States v. Ferro*, 681 F.3d 1105, 1107. (9th Cir. 2012)]

81. In the July 30 Order, Judge Bernhard sanctioned Sousa in the amount of $11,000 pursuant to Va. Sup. Ct. R. 4:12 and VA Code § 8.01-271.1. As alleged below, the imposition of sanctions under the foregoing statutory provisions violated Sousa's Eight Amendment Rights.

#### (A) *The Imposition of Sanctions Against Sousa Under Rule 4:12 Violates the Excessive Fines Clause*

82. With respect to the issuance of sanctions for attorney's fees pursuant to Rule 4:12(d), the July 30 Order makes clear that the sanction for attorneys' fees were "in consequence for [Sousa's] willful and negligent thwarting of the orders of this Court compelling discovery." (Exhibit 5 at p. 20)

83. Although Judge Bernhard described the Rule 4:12 sanctions as "remedial" in nature, the penalty imposed for "thwarting discovery orders" in this case, and in every case, possesses an immutably retributive and punitive purpose.

84. In this case, the fine of $11,000 which was imposed against Sousa bore absolutely no connection to the expenses incurred by Willberg solely as a result of Sousa's "thwarting of discovery orders." Instead, Sousa was not only fined for expenses incurred in discovery, but for *every expense incurred by Willberg throughout the case*—irrespective of whether those expenses bore any tangential relationship to Sousa's purported "discovery misconduct."

85. Having dispensed with the issue of whether the fine was imposed for a punitive purpose, we now turn to Sousa's purported culpability and whether the fine imposed bears any connection to his culpability.

86. According to the July 30 Order, "the imposition of Rule 4:12 attorney's fees on counsel rather than on the party...is generally a rare circumstance largely dependent on at a minimum, extensive neglect of duty to his or her client on the part of the lawyer. In the instant case, such requisite neglect is evident from the conduct of Sousa which is thus not substantially justified to excuse his liability." (Exhibit 5 at pp. 17-18)

87. Judge Bernhard is mistaken.

88. In short, the remedies of Rule 4:12(d) only apply "when a party *completely fails* to respond to discovery requests, such as not appearing at a deposition after proper service or *not responding at all* to a set of interrogatories." [*Brown v. Black*, 260 Va. 305, 313 (2000)] (emphasis added)

89. As alleged herein, Sara did, in fact, provide a number of substantive responses to Willberg's interrogatories. But even when assuming Sara served no substantive responses, and Sousa served only objections to Willberg's interrogatories, Rule 4:12(d) sanctions are only applicable when an attorney completely fails "to serve answers *or* objections to interrogatories." (emphasis added).

90. In this case, there is no possible dispute that, at the very minimum, Sousa served objections on Sara's behalf. The July 30 Order admits as much by acknowledging that "Sousa had failed to answer relevant discovery other than [with] objections." (Exhibit 5. at p. 5)

91. Because Sousa did not completely fail to respond to discovery, the July 30 Order is void as violative the Excessive Fines Clause because Sousa cannot be held culpable for conduct which

is not subject to sanctions pursuant to Rule 4:12(d). For this same reason, the measure of sanctions bears no rational connection to Sousa's culpability.

92. Because the July 30 Order was issued in violation of the Excessive Fines Clause, the July 30 Order is void as violative of the Eighth Amendment, and the continued attempt by Defendants to impose the terms of that Order on Sousa, under threat of imprisonment, serves as a concurrent violation of Sousa's constitutional right to substantive and procedural due process.

**(B) *Imposition Of Sanctions Under Va. Code § 8.01-271.1 Violates the Excessive Fines Clause and Was an Abuse of Judge Bernhard's Authority***

93. With respect to the issuance of sanctions pursuant to Va. Code § 8.01-271.1, the July 30 Order makes clear that these sanctions were imposed as a "deterrent." (Exhibit 5 at p. 19).

94. Because these sanctions were punitive in nature, we again turn to whether the penalty imposed bears any connection to Sousa's purported culpability.

95. According to Judge Bernhard, "Sousa made an oral motion for continuance at the June 11, 2019, trial date, in which he stated to the Court that he had complied with the Court's orders to compel and had supplemented discovery but needed a continuance to the next day in order to search for and bring documentary proof from his office...While *the motion for a continuance was denied*, the Court did allow Sousa to provide the Court such substantiation post-trial and imparted that in such event, the Court might consider reopening the evidence. No such post-trial filing was forthcoming, and the Court thus infers the averred supplementation of discovery never transpired. The Court concludes that Sousa was untruthful to the Court in support of his motion and thus stands in violation of Virginia Code § 8.01-271.1." (Exhibit 5 at p. 18) (emphasis added).

96. In short, "Code 8.01-271.1 imposes no continuing duty upon a lawyer to update his pleadings in light of any new findings." [*Oxenham v. Johnson*, 241 Va. 281, 287 (1991)]. Given

that Judge Bernhard acknowledged denying the motion for continuance, there was no continuing duty for Sousa to update Judge Bernhard. For this initial reason, Judge Bernhard's sanctions have no reasonable connection to Sousa's purported culpability. Accordingly, such sanctions were imposed in excess of Judge Bernhard's jurisdiction; in violation of the Excessive Fines Clause; and in violation of Sousa's rights to substantive and procedural due process.

97. Moreover, as alleged herein at ¶¶ 50-53, Sousa never represented that he had served updated interrogatories, but instead stated "I don't recall and I don't like to make misrepresentations, and I don't like to lead the Court wrong, so what I do like to ask is a little leeway" to return to his office to make sure the document was there.

98. As also alleged herein at ¶¶ 28 and 37, contrary to Judge Bernhard's fanciful statement that Sousa acted "in derogation of two court orders" (Exhibit 5 at p. 5), Sousa was never the subject of any court order. Instead, it was Sousa's client, Sara, who was the subject of the Court's Order.

99. Because Sousa never violated any Court orders; was never provided notice that Judge Bernhard would impose sanctions for "dishonesty"; was never dishonest in any way with Judge Bernhard; and, most importantly, had no continuing duty to update Judge Bernhard after the motion for continuance was denied, Judge Bernhard's imposition of sanctions under § 8.01-271.1 was in violation of the Excessive Fines Clause because Sousa cannot be held culpable for "not updating the court" when, by denial of the motion for continuance, *Sousa had no continuing duty* to update the Court.

100. More fundamentally, the record reflects that Judge Bernhard lied when he accused Sousa of affirming that he had served a second set of supplemental discovery. Sousa made no such affirmation or representation. For this same reason, the measure of sanctions bears no rational

connection to Sousa's culpability.

101.  Accordingly, the sanctions under § 8.01-271.1 were issued in violation of the Excessive Fines Clause and July 30 Order is thus void.

## VII.  THE CURRENT STATE OF AFFAIRS

102.  More than two years after the July 30 Order was issued, Sousa has already been jailed once for "noncompliance," and Barr, on behalf of her client Willberg, continues to seek enforcement of the void July 30 Order in Fairfax. (See, Exhibit 6)

103.  Attached hereto as Exhibit 6 is a true and correct copy of Barr's November 12, 2021, motion to enforce the July 30 Order.

104.  As of the date of today's filing, every judge in Fairfax County Circuit Court has recused themselves from the administration of any matters where Sousa is an acting litigant.

105.  In the absence of relief, Sousa will suffer irreparable harm to both his property and liberty interests—as already demonstrated by Sousa's arrest and confinement directly related his purported "noncompliance" with the June 30 Order.

## FIRST CAUSE OF ACTION
## DECLARATORY RELIEF FOR VIOLATION OF DUE PROCESS
### (Against All Defendants)

106.  Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs above and, to the extent necessary, pleads this cause of action in the alternative.

107.  An actual controversy has arisen and now exists between Sousa and Defendants regarding the enforceability of the July 30 Order on jurisdictional and due process grounds.

108.  A declaratory judgement is necessary in that Sousa contends that Defendants have no authority to enforce the July 30 Order because the July 30 Order is void due to its issuance in violation of Sousa's rights to due process as alleged herein.

109.   Defendants appear to contend, without substantiation or specification, that the July 30 Order is enforceable; was not issued in derogation of Sousa's rights to due process; and that Sousa is responsible for the sanctions and fees assessed in the July 30 Order.

110.   Plaintiff is informed and believes, and based on such information and belief alleges, that all parties necessary to the resolution of this matter are before the Court.

111.   This action does not seek the mere giving of legal advice or an advisory opinion, but instead seeks a declaratory judgment as to the rights of the Plaintiff. Specifically, the July 30 Order imposes sanctions and the threat of imprisonment against Sousa. But because these sanctions were issued in violation of Judge Bernhard's jurisdiction and in violation of Sousa's right to due process, the July 30 Order is void, and Fairfax is not legally entitled to enforce a void order, and Chapilliquen is not entitled to sanctions against Sousa.

112.   Sousa contends that the July 30 Order was issued in derogation of his right to due process; reflects an improper interpretation of law; and improperly imposes fines and imprisons Sousa based on a void and invalid order.

113.   In engaging in the acts alleged herein, Defendants have deprived Sousa of rights, privileges and immunities secured by the Constitution of the United States, specifically, the right to due process of the laws as secured by the Fifth Amendment. In particular, Defendants failed to adhere to the statutory notice provisions on motions in limine as set forth in Rule 1:18 which requires that absent leave of court, any motion in limine which requires argument exceeding five minutes must be duly noticed and heard before the day of trial.

114.   As alleged herein, the motion in limine which precipitated Sousa's sanctions required more than five (5) minutes of argument. Consequently, the motion was required to have been properly noticed and heard before the actual day of trial.

115. However, as alleged herein, the motion was neither properly noticed, nor heard before the actual day of trial. Instead, the motion was heard on the day of, and during trial. Accordingly, the July 30 Order was issued in derogation of Sousa's right to due process.

116. Sousa desires a declaration of rights with respect to the constitutionality, application, and/or nonapplication of the July 30 Order and asks this Court to make a declaration of such rights, duties, and responsibilities, and to make a declaration as to the validity and constitutionality of the July 30 Order. Such a declaration is necessary and appropriate at this time in order that Sousa may proceed under the law. There are no other remedies available to Sousa.

## SECOND CAUSE OF ACTION
## DECLARATORY RELIEF FOR VIOLATION OF THE EXCESSIVE FINES CLAUSE
### (Against All Defendants)

117. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs above and, to the extent necessary, pleads this cause of action in the alternative.

118. An actual controversy has arisen and now exists between Sousa and Defendants regarding the enforceability of the July 30 Order on the grounds that the July 30 Order imposes excessive fines in violation of the Eighth Amendment's prohibition on cruel and unusual punishment as alleged herein at ¶¶ 82-101.

119. A declaratory judgement is necessary in that Sousa contends that Defendants have no authority to enforce the July 30 Order because the July 30 Order is void due to its issuance in violation of the Eight Amendment and the Excessive Fines Clause.

120. Defendants appear to contend, without substantiation or specification, that the July 30 Order is enforceable, does not constitute a violation of the Excessive Fines Clause, and Sousa is thus responsible for the sanctions and fees assessed in the July 30 Order.

121. Plaintiff is informed and believes, and based on such information and belief alleges, that

all parties necessary to the resolution of this matter are before the Court.

122. This action does not seek the mere giving of legal advice or an advisory opinion, but instead seeks a declaratory judgment as to the rights of the Plaintiff. Specifically, the July 30 Order imposes sanctions and the threat of imprisonment against Sousa. But because these sanctions were issued in violation of Judge Bernhard's jurisdiction and in violation of the Eighth Amendment's prohibition on excessive fines, the July 30 Order is void, and Fairfax is not legally entitled to enforce a void order, and Chapilliquen is not entitled to sanctions against Sousa.

123. Sousa contends that the July 30 Order was issued in derogation of Sousa's right to due process; imposes excessive fines and cruel and unusual punishment; reflects an improper interpretation of law; and improperly imposes fines and imprisons Sousa based on a void and invalid order.

124. In engaging in the acts alleged herein, Defendants have deprived Sousa of rights, privileges and immunities secured by the Constitution of the United States, specifically, the right to be free from excessive fines and cruel and unusual punishment as set forth within the Eighth Amendment. In particular, Defendants continue to seek to enforce an order whose sanctions were imposed for conduct which was not eligible for sanctions under Rule 4:12(d) or Va. Code § 8.01-271.1. For this same reason, the measure of sanctions bears no rational connection to Sousa's culpability.

125. Sousa desires a declaration of rights with respect to the constitutionality, application, and/or nonapplication of the July 30 Order and asks this Court to make a declaration of such rights, duties, and responsibilities, and to make a declaration as to the validity and constitutionality of the July 30 Order. Such a declaration is necessary and appropriate at this time in order that Sousa may proceed under the law. There are no other remedies available to Sousa.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

<u>All Causes of Action</u>

1.  That the court declare the respective rights, duties, and responsibilities of Sousa and the Defendants with respect to the July 30 Order and declare that that July 30 Order has no application to Plaintiff in this matter, and that the July 30 Order is unconstitutional, void, and invalid;

2.  That Defendants and all others be enjoined from enforcing against Sousa the sanctions issued in the July 30 Order; and

3.  For such other and further relief as this Court deems just and proper.

Date: _November 26, 2021_

Randall Sousa
Pro Se Plaintiff

## **VERIFICATION**

I, **RANDALL SOUSA**, declare under penalty of perjury under the laws of the United States and the Commonwealth of Virginia that I am the pro se Plaintiff in the above-captioned matter. I have read the entirety of the Complaint and understand the contents thereof. The same is true of my own knowledge, except to those matters which are alleged on information and belief, and as to those matters, I believe them to be true.

Date: _November 26, 2021_

RANDALL SOUSA

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRIGINIA**
_Civil_ **DIVISION**

FILED

_Randall Sousa_
Plaintiff(s),

2021 NOV 26  P 12: 25

v.

_Circuit Court of Fairfax County of_
_willherg T. Chapilliguen_
Defendant(s).

Civil Action Number: _1:21-cv-01304(TSE-_
_JFA)_

## LOCAL RULE 83.1(M) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of _Complaint_ .
(Title of Document)

_Randall Sousa_
Name of *Pro Se* Party (Print or Type)

_Randall Sousa_
Signature of *Pro Se* Party

Executed on: _11/26/2021_ (Date)

**OR**

The following attorney(s) prepared or assisted me in preparation of _____.
(Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)