Randall Sousa
*Pro Se Plaintiff*
700 East Main Street, # 970
Richmond, VA 23218
Tel: (804) 372-7092
Email: randallsousa@gmail.com

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF VIRGINIA – ALEXANDRIA DIVISION

RANDALL SOUSA,

      Plaintiff,

    v.

THE CIRCUIT COURT OF THE
COMMONWEALTH OF VIRGINIA; THE
HONORABLE DAVID BERNHARD; THE
HONORABLE CHARLES S. SHARP; and
WILLBERG TEDDY CHAPILLQUEN

      Defendants.

Case No.: 1:21-CV-01304-MSN-JFA

**OPPOSITION TO DEFENDANTS
CIRCUIT COURT OF THE
COMMONWEALTH OF VIRGINIA,
JUDGE DAVID BERNHARD, AND
JUDGE CHARLES SHARP'S MOTION
TO DISMISS**

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................i – iv

I.     INTRODUCTION ................................................................................1

II.    STATEMENT OF RELEVANT FACTS ...........................................................2

   (A)  ALLEGATIONS RELATED TO JUDGE BERNHARD'S VIOLATION OF SOUSA'S DUE
       PROCESS RIGHTS ....................................................................................3

   (B)  ALLEGATIONS RELATED TO JUDGE BERNHARD'S VIOLATIONS OF SOUSA'S
       EIGHTH AMENDMENT RIGHT TO BE FREE FROM EXCESSIVE FINES.......................4

   (C)  JUDGE BERNHARD'S EXTRAJUDICIAL INTERFERENCE HAS PREVENTED SOUSA
       FROM APPEALING THE JULY 30 ORDER ........................................................5

   (D)  RELEVANT EVENTS SUBSEQUENT TO THE ISSUANCE OF THE JULY 30 ORDER ..........7

III.   ARGUMENTS RELATED TO FRCP 12(B)(1) ................................................11

   (A)  BECAUSE SOUSA SEEKS PROSPECTIVE DECLARATORY RELIEF, JUDICIAL
       DEFENDANTS CANNOT RELY ON ELEVENTH AMENDMENT IMMUNITY ..................11

   (B)  YOUNGER ABSTENTION IS INAPPLICABLE TO THE FACTS OF THIS CASE................13

      *1.*  *There is No "Ongoing" State Proceeding Because Sousa is Not a Party to the*
         *State Court Action and His Interests Are Not Intertwined with the State Court*
         *Defendant*.................................................................................................14

      *2.*  *The Commonwealth Has No "Ongoing" Substantial Interest in the State Court*
         *Action*......................................................................................................15

      *3.*  *There is No Adequate State Forum*.............................................................16

        (a) Judge Bernhard's Extrajudicial Interference Prevented Sousa from Having an
           Adequate Opportunity to Appeal .......................................................16

        (b) Judge Sharp Has Made Clear that the State Court Will Not Review the
           Constitutionality of the July 30 Order.................................................17

        (c) By Defendants' Own Admission, Sousa Lacks an Adequate State Forum
           Because the Statute of Limitations Has Lapsed ...................................18

        (d) The Virginia State Court Openly Harbors Bias Against Sousa.........................18

   (C)  THE ROOKER-FELDMAN DOCTRINE DOES NOT APPLY BECAUSE SOUSA WAS NOT A
       PARTY TO THE STATE COURT CASE...........................................................21

-i-
TABLE OF CONTENTS

**(D)** **JUDICIAL IMMUNITY DOES NOT APPLY TO SOUSA'S CIVIL RIGHTS CLAIMS**..........22

  *1.*  *Judicial Immunity is Inapplicable to Prospective Declaratory Relief* ..................22

  *2.*  *Judicial Immunity is Inapplicable When A Judicial Officer Engages in Extrajudicial Interference of the Right to Seek Appellate Review* .......................23

**(E)** **THE "CIRCUIT COURT" SHOULD BE ALLOWED TO SERVE AS A PLACEHOLDER UNTIL SOUSA CAN ASCERTAIN THE PERSON(S) TO BE NAMED**................................26

**IV.** **ARGUMENTS RELATED TO FRCP 12(B)(6)** ...................................................26

**(A)** **AS A RESULT OF VIRGINIA'S COVID EMERGENCY JUDICIAL ORDERS, SOUSA HAS TIMELY FILED THE INSTANT ACTION** .......................................................................27

**(B)** **SOUSA HAS ADEQUATELY ALLEGED VIOLATIONS OF THE FIFTH AND EIGHTH AMENDMENTS** ..............................................................................................................28

**V.** **CONCLUSION** ...............................................................................................30

**VI.** **STATEMENT ON ORAL ARGUMENT** ............................................................31

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                              **PAGE**

*AmerisourceBergen Corp. v. Roden*
   495 F.3d 1143 (9th Cir. 2007)..............................................................................13-14, 15

*Ceriani v. Dionysus, Inc.*
   2022 U.S.Dist.LEXIS 73499 (E.D. Va. 2022)................................................................27

*Cerner Middle E. Ltd. v. iCapital, LLC*
   939 F.3d 1016 (9th Cir. 2019)......................................................................................11

*Cooksey v. Futrell*
   721 F.3d 226 (4th Cir. 2013)........................................................................................26

*Cooper v. Rapp*
   702 F. App'x 328 (6th Cir. 2017)..................................................................................22

*Coulter v. United States*
   256 F.Supp.2d 484 (E.D. Va. 2003)..............................................................................11

*Doe v. Cummins*
   662 F.App'x 437 (6th Cir. 2016)...................................................................................12

*Edelman v. Jordan*
   415 U.S. 651 (1974) .....................................................................................................12

*Evans v. B. F. Perkins Co.*
   166 F.3d 642 (4th Cir. 1999)........................................................................................11

*Ex Parte Grossman*
   267 U.S. 87 (1925) .......................................................................................................16

*Ex Parte Young*
   209 U.S. 123 (1908) .....................................................................................................11

*Freudensprung v. Offshore Technical Servs., Inc.,*
   379 F.3d 327 (5th Cir. 2004)........................................................................................11

*Gibson v. Berryhill*
   411 U.S. 564 (1973) .....................................................................................................18

*Guaranty Trust Co. of New York v. York*
   326 U.S. 99 (1945) .......................................................................................................25

*Habich v. City of Dearborn*
    331 F.3d 524 (6th Cir. 2003)..........................................................................18

*Huminski v. Corsones*
    396 F.3d 53 (2d Cir. 2005)..........................................................................23

*Hi Tech Trans, LLC v. New Jersey*
    382 F.3d 295 (3d Cir. 2004)....................................................................18-19

*Hulsey v. Cisa*
    947 F.3d 246 (4th Cir. 2020)........................................................................21

*Idaho v. Coeur d'Alene Tribe of Idaho*
    521 U.S. 261 (1997) ...................................................................................13

*In re Boon Glob. Ltd.*
    923 F.3d 643 (9th Cir. 2019)........................................................................11

*Justice Network Inc. v. Craighead Cty.*
    931 F.3d 753 (8th Cir. 2019)........................................................................22

*Lance v. Dennis*
    546 U.S. 459 (2006) ...................................................................................21

*Laurel Sand & Gravel, Inc. v. Wilson*
    519 F.3d 156 (4th Cir. 2008)........................................................................13

*Lozman v. City of Riviera Beach*
    713 F.3d 1066 (11th Cir. 2013).....................................................................21

*McNair v. Lend Lease Trucks, Inc.*
    95 F.3d 325 (4th Cir. 1996).........................................................................27

*Mitchum v. Foster*
    407 U.S. 225 (1972) ...................................................................................21

*Pennhurst State Sch. and Hosp. v. Halderman*
    465 U.S. 89 (1984) .................................................................................11-12

*Pennzoil Co. v. Texaco, Inc.*
    481 U.S. 1 (1987) .......................................................................................15

*Perez v. Ledesma*
    401 U.S. 82 (1971) .....................................................................................18

*Pulliam v. Allen*
 466 U.S. 522 (1984) ....................................................................22

*Robinson v. Stovall*
 646 F.2d 1087 (5th Cir. 1981)......................................................14

*Sonner v. Premier Nutrition Corp.*
 971 F.3d 834 (9th Cir. 2020)........................................................25

*Stump v. Sparkman*
 435 U.S. 349 (1978) ....................................................................23

*Taubman Realty Group L.P. v. Mineta*
 198 F.Supp.2d 744 (E.D. Va. 2002) ............................................26

*Thorne v. Hale*
 2009 U.S.Dist.LEXIS 25938 (E.D.Va. 2009)..............................26

*United State v. Composite State Board of Medical Examiners*
 656 F.2d 131 (5th Cir. 1981)........................................................14

*United States v. Mendoza*
 468 F.3d 1256 (10th Cir. 2006)....................................................24

*Younger v. Harris*
 401 U.S. 37 (1971) ......................................................................16

**STATE CASES**

*AGCS Marine Ins. Co. v. Arlington Cty.*
 293 Va. 469 (2017)......................................................................26

*Brown v. Black*
 260 Va. 305 (2000)................................................................24, 29

*Carpenter v. United States*
 144 A.3d 1141 (D.C. 2016).....................................................23-24

*Disciplinary Proceedings Against Piontek*
 927 N.W.2d 522 (Wis. 2019)........................................................24

*Fisher v. Salute*
 51 Va.App. 293 (2008) ................................................................16

*K.D. v. Bozarth*
 313 N.J.Super. 561 (Super.Ct.App.Div. 1998) ............................23

-iii-
TABLE OF AUTHORITIES

*Lockheed Information Management Systems v. Maximus*
   259 Va. 92 (2000)..........................................................................................17-18

*McCarthy v. Leiser*
   2020 Va.Unpub.LEXIS 14 (2020) ..................................................................6, 7

*Oxenham v. Johnson*
   241 Va. 281 (1991) ......................................................................................5, 24

*Rook v. Rook*
   233 Va. 92 (1987)............................................................................................16

*State v. McCrary*
   676 N.W.2d 116 (S.D. 2004) ..........................................................................24

**FEDERAL STATUTES**

42 U.S.C. § 1983..................................................................................................22

ABA Code of Judicial Conduct, Commentary to Cannon 3(B)(7)..............................23

Federal Court Improvement Act of 1996 ................................................................22

**STATE STATUTES**

Va. Sup. Ct. Rule 1:18B(VII) ..........................................................................3, 4, 28

Va. Sup. Ct. Rule 4:12(d) ...............................................................................3, 4, 24

Virginia Code § 8.01-271.1 ..............................................................................4, 5, 30

**OTHER RESOURCES**

*Judicial Conduct and Ethics*
   (Bender 2020) ...............................................................................................23

*The Judiciary – Selection, Compensation, Ethics, and Discipline*
   (Praeger 1987)...............................................................................................23

## I.    INTRODUCTION

Plaintiff Randall Sousa ("Sousa") hereby submits this Opposition to Defendants Circuit Court of Virginia (the "Circuit Court"), Judge David Bernhard, and Judge Charles Sharp's (collectively "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC").1 In short, each of Defendants' arguments in support of dismissal are completely lacking in merit.

*First*, the FAC clearly sought prospective declaratory relief against the Judicial Defendants and the Circuit Court. Claims for prospective declaratory relief are not barred by Eleventh Amendment immunity.

*Second*, Younger abstention is inapplicable because Sousa was not a party to the State Court proceedings; did not have interests which were identical to the State Court litigants; did not have an adequate opportunity to raise his constitutional claims in State Court proceedings; and by evidence on this record, there exists a presumption that the Virginia State Court cannot be trusted to uphold Sousa's civil rights and is therefore an inadequate forum.

*Third*, there is no Rooker abstention because Rooker does not bar actions by prior nonparties.

*Fourth*, there is no judicial immunity because Plaintiff is seeking prospective declaratory relief under 42 U.S.C. § 1983. Furthermore, the doctrine of judicial immunity arose out of the creation of the right to appeal. Consequently, judicial immunity does not extend to situations where, like here, the judge maliciously interferes with the right to appellate review.

*Fifth*, there is no bar based on the statute of limitations because in response to the COVID-19 pandemic, the Virginia Supreme Court's Emergency Judicial Orders extended/tolled Sousa's statute of limitations by 126 days.

---

[1] Judge Bernhard and Judge Sharp shall collectively be referred to as "Judicial Defendants."

*Sixth*, with respect to Sousa's purported failure to state a claim, Defendants' perfunctory argument is contradicted by the FAC's allegations. As drawn out in greater detail below, each of Defendants' arguments in support of dismissal are erroneous, misguided, and lack merit.

## II.   STATEMENT OF RELEVANT FACTS

The FAC alleges that at the time of the facts giving rise to the above-captioned case, Sousa was an attorney licensed to practice law in the Commonwealth of Virginia and had been retained as counsel by Ms. Sara Chapilliquen ("Sara") in the divorce matter of *Chapilliquen v. Chapilliquen* (the "State Court case"). Defendant Willberg Chapilliquen ("Willberg") was the plaintiff in the State Court case, and Sara was the defendant.

During the State Court case, Sousa, on Sara's behalf, served answers or objections to each and every one of Willberg's discovery requests. Nevertheless, on April 26, 2019, Willberg's attorney, Erin C. Barr ("Barr"), moved to compel more complete responses and for an order overruling the objections. [Dkt. # 28 at ¶ 37]. The motion was ultimately granted, and "[d]efendant [Sara Chapilliquen] was ordered to provide full and complete responses by May 3, 2019." [*Id.* at ¶ 38, citing Dkt. # 2 at 14:3-7].

The matter of *Chapilliquen v. Chapilliquen* had been set for a two-day trial scheduled to begin on June 11, 2019, in the Circuit Court of Fairfax County, the Honorable David Bernhard ("Judge Bernhard"), presiding. On June 4, 2019, seven days prior to trial, Barr filed an evidentiary motion in limine *without noticing the motion* or filing a praecipe. *Barr later admitted under oath that she did not notice the motion*. [Dkt. # 28 at ¶¶ 40–41]. The motion in limine sought to exclude Sara from providing any testimony, introducing any witnesses, or introducing any exhibits in her case-in-chief. It further sought relief in the form of all costs and attorney's fees "incurred in bringing this action" because Sara had failed to provide "full answers

to interrogatories and responses to requests for production. As a point of reemphasis, the motion was *not noticed* for a hearing, and Barr admitted as much under oath in a later proceeding. [Dkt. # 28 at ¶ 43]

### (A)   ALLEGATIONS RELATED TO JUDGE BERNHARD'S VIOLATION OF SOUSA'S DUE PROCESS RIGHTS

Subsequent to trial, on July 30, 2019, Judge Bernhard issued a "Letter Opinion" (the "July 30 Order) which imposed a sanction against Sousa personally in the amount of $11,000 under Virginia Supreme Court Rule 4:12(d) and Virginia Code § 8.01-271.1. [*Id.* at ¶¶ 60–61]. Sousa alleged this fine of $11,000 was "precipitated by the request by…Willberg…for an award of attorney's fees" in Willberg's motion in limine. [*Id.* at ¶ 70].

Pursuant to the Scheduling Order, as well as Va. Sup. Ct. Rule 1:18B(VII), absent leave of court, any motion in limine which requires argument exceeding five minutes must be duly noticed and heard before the day of trial. [*Id.* at ¶ 71]. Importantly, the trial transcript demonstrates that argument on the motion in limine extended for *at least* 20 pages of transcript. [*Id.* at ¶¶ 46–51]. Because the motion in limine took more than five (5) minutes to argue, the motion was required, pursuant to Rule 1:18B(VII), to have been properly noticed and heard before the day of trial. [*Id.* at ¶ 71]. However, the motion was neither properly noticed, nor heard before the day of trial. Instead, Judge Bernhard heard the motion during the actual trial itself. Moreover, the motion *did not seek attorney's fees from Sousa*, but from Sousa's client, Sara. [*Id.* at ¶¶ 40-45, 73]. Sousa thus had no notice fees would be imposed against him personally.

There can be no question that Va. Sup. Ct. R. 1:18B is intended to serve as a statutory embodiment of the Fifth Amendment's Due Process Clause by articulating precisely what constitutes "reasonable notice" with respect to motions in limine. But because Sousa was not provided adequate notice in accordance with Va. Sup. Ct. R. 1:18B, Judge Bernhard had no

discretion or jurisdiction to impose any sanctions against Sousa because those sanctions were issued in the absence of reasonable notice. Consequently, the sanctions imposed by Judge Bernhard were imposed in derogation of Sousa's statutory rights under the Fifth Amendment and Va. Sup. Ct. R. 1:18B. [Dkt. # 28 at ¶ 74].

### (B)  ALLEGATIONS RELATED TO JUDGE BERNHARD'S VIOLATION OF SOUSA'S EIGHTH AMENDMENT RIGHT TO BE FREE FROM EXCESSIVE FINES

Sousa alleges that in the July 30 Order, Judge Bernhard made clear that he was sanctioning Sousa in the amount of $11,000 in attorneys' fees pursuant to Va. Sup. Ct. R. 4:12(d) "in consequence for Sousa's willful and negligent thwarting of the orders of this Court compelling discovery." However, Sousa alleges that Rule 4:12(d) sanctions only apply "when a party completely fails to respond to discovery requests, such as not appearing at a deposition after proper service or not responding at all to a set of interrogatories." [Dkt. # 28 at ¶ 89]. In fact, the textual provisions of Rule 4:12(d) make explicit that its sanctions are only applicable to a party's attorney when the attorney completely fails "to serve answers _or_ objections to interrogatories." [*Ibid.*]. The problem is that Sousa cannot be held culpable for violating Rule 4:12(d) because "there is no possible dispute that, at the very minimum, Sousa served objections on Sara's behalf. Judge Bernhard *admits* as much by acknowledging that 'Sousa had failed to answer relevant discovery other than [with] objections.'" [Dkt. # 28 at ¶ 91; Dkt. # 1-5 at p. 5]

Notwithstanding the rule that a court may not sanction an attorney under Rule 4:12(d) unless the attorney completely fails to appear at a deposition or serve answers or objections to discovery, Judge Bernhard *literally admitted in writing* that Sousa did indeed serve objections, but he sanctioned Sousa under Rule 4:12(d) anyway. By sanctioning Sousa for completely innocuous and unsanctionable conduct, Judge Bernhard violated Sousa's Eighth Amendment right to be free from excessive fines.

OPPOSITION TO MOTION TO DISMISS

With respect to Judge Bernhard's issuance of sanctions pursuant to Va. Code § 8.01-271.1, Judge Bernhard makes clear that these sanctions were imposed as a "deterrent":

> "Sousa made an oral motion for continuance at the June 11, 2019, trial date, in which he stated to the Court that he had complied with the Court's orders to compel and had supplemented discovery but needed a continuance to the next day in order to...bring documentary proof...While *the motion for a continuance was denied*, the Court did allow Sousa to provide the Court such substantiation post-trial and...in such event, the Court might consider reopening the evidence. No such post-trial filing was forthcoming, and the Court...concludes that *Sousa was untruthful to the Court*...in violation of Va. Code § 8.01-271.1."

[Dkt. # 28 at ¶ 96 (emphasis added)].

Again, the problem is that Va. Code § 8.01-271.1 imposes no continuing duty upon a lawyer to update his pleadings in light of any new findings. [*Oxenham v. Johnson*, 241 Va. 281, 287 (1991)]. Given that Judge Bernhard acknowledged denying the motion for continuance, there was no continuing duty for Sousa to update Judge Bernhard. Furthermore, Sousa never represented that he had served updated interrogatories, but instead stated "I don't recall and I don't like to make misrepresentations, and I don't like to lead the Court wrong, so what I do like to ask is a little leeway" so Sousa could return to his office to make sure the documents were there. [Dkt. # 28 at ¶¶ 98-99; Dkt. # 2 at 216:17-217:2]. Conveniently, Judge Bernhard omitted the foregoing colloquy from the July 30 Order, and then sanctioned Sousa for "lying."

## (C) JUDGE BERNHARD'S EXTRAJUDICIAL INTERFERENCE HAS PREVENTED SOUSA FROM APPEALING THE JULY 30 ORDER

In the July 30 Order, Judge Bernhard states that of the $11,000 sanction imposed against Sousa "$775.00 was previously ordered only against [Sara] by an order of another judge...on April 26, 2019...but now becomes a sanction for which Mr. Sousa is jointly obligated." [*Id.* at ¶ 108; Dkt. # 1-5 at p. 21, fn. 10]. As a result of the July 30 Sanction Order's legally offensive nature, Sousa filed an appeal in Sara's name because the July 30 Order imposed a significant amount of relief against *both* Sara and Sousa. [Dkt. # 28 at ¶ 109]. Thus, the intention was to

address all of Judge Bernhard's errors—including his unconstitutional imposition of sanctions against Sousa—in the appeal filed on Sara's behalf. [*Id.* at ¶ 110].

However, before its issuance, but "[c]oncurrent with his drafting of the July 30 Order, Judge Bernhard, acting outside of his official duties, conducted an extrajudicial investigation into Sousa and his law practice, and then submitted the 'findings' of that investigation to the Virginia State Bar ("VSB"), along with the July 30 Order, as some manner of 'bar complaint' against Sousa." [*Id.* at ¶ 103]. The contents of Judge Bernhard's bar complaint reflect that during the pendency of the State Court case, "Judge Bernhard decided to go on his own personal fact-finding mission by searching Sousa's website, his Yelp and Google reviews, as well as his court filings in other cases. Then, after harvesting what he believed to be 'inculpatory' evidence, Judge Bernhard attached and intermingled the findings of this extra-judicial investigation with the July 30 Order, and then sent it to the Virginia Bar as a 'bar complaint' against Sousa *for the purpose of interfering with Sousa's ability to properly appeal* Judge Bernhard's unconstitutional July 30 Order." [*Id.* at ¶ 105 (emphasis added); *see also*, Declaration of Randall Sousa ("Sousa Dec.") at ¶ 2; Exhibit 1 – Bernhard Bar Complaint].

As a point of emphasis, this is not the first time Judge Bernhard has crossed all legal and ethical boundaries by conducting extrajudicial investigations into parties (and their attorneys) while a case involving those parties was currently pending before his court. For example, in *McCarthy v. Leiser*, 2020 Va.Unpub.LEXIS 14 (2020), the Virginia Supreme Court, in an unpublished opinion, briefly mentions that Judge Bernhard conducted an extrajudicial investigation in the *McCarthy* case, but troublingly, *the opinion does not even mention Judge Bernhard by name*. Even more troubling is that the opinion acknowledges Judge Bernhard's extrajudicial investigation, but makes absolutely no mention of the unlawful nature of such

conduct, nor does it admonish Judge Bernhard in any way. [See, Sousa Dec. at ¶ 3; Exhibit 2 – *McCarthy* Opinion]. The only way to discover the identity of the unnamed judge in the Supreme Court's unpublished *McCarthy* opinion is by locating a copy of McCarthy's appellate brief. [*Id.* at ¶ 4; Exhibit 3 – McCarthy Appellate Brief]. Put simply, the *McCarthy* opinion reflects an active attempt by the Virginia Supreme Court's to sweep Judge Bernhard's misconduct under the rug.

Even though Judge Bernhard's sanctions against Sousa were factually frivolous and facially unconstitutional, Judge Bernhard then used those baseless sanctions as a pretext to send a complaint to the VSB for the purpose of interfering with Sousa's ability to the unconstitutional and legally erroneous July 30 Order. [Dkt. # 28 at ¶ 105]. Indeed, Judge Bernhard's unlawful intent to interfere with Sousa's right to appeal is laid bare by the contents of his letter which urges the VSB to conduct an immediate, "*early*" investigation of Sousa and his law practice. [Sousa Dec. at ¶ 2; Exhibit 1 (emphasis added)]. Upon receiving Judge Bernhard's complaint, the VSB subpoenaed Sousa to turn over all documents related to his representation of Sara. When Sousa refused on the grounds of privilege because the action was still pending—but would have given the VSB everything upon the case's finality—the VSB suspended Sousa's law license. [Dkt. # 28 at ¶ 112]. Notably, had it been Sara who filed a bar complaint, Sousa would have immediately given the VSB whatever they wanted. But it was not Sara who complained. It was Judge Bernhard. [*Id.* at ¶ 113].

Because Sousa was no longer an attorney, he was required to file an appeal in his own name. Unfortunately, by the time his law license was suspended, the 30-day time limit to file a notice of appeal on Sousa's own behalf had lapsed. Sousa thus had no opportunity for appeal. [*Id.* at ¶¶ 114-115].

**(D)   RELEVANT EVENTS SUBSEQUENT TO THE ISSUANCE OF THE JULY 30 ORDER**

Subsequent to Judge Bernhard's issuance of the July 30 Order, every single one of the

judges in the Circuit Court of Fairfax County recused themselves from the future administration of any matter involving Sousa. [Dkt. # 28 at p. 121]. The Virginia Supreme Court thereafter issued an Order recusing Judge Bernhard and appointing Judge Charles Sharp ("Judge Sharp") to handle any and all matters involving Sousa—including Sousa's own divorce case. [*Id.* at ¶ 5].

On November 12, 2021, Barr, on behalf of Willberg, filed a Motion to Enforce Payment of the July 30 Order. [Dkt. # 11 at p. 12; Dkt. # 1-6]. The hearing was set for January 18, 2022. Because Sousa had already made the relevant constitutional arguments before, but was still jailed until the sanction was paid, it was crystal clear that he would suffer the same fate once again. [Dkt. # 28 at ¶ 122]. The only reason Sousa was able to get his money back the first time is because Sousa was mistakenly required to remit payment directly to the Commonwealth instead of Attorney Barr or her client. Consequently, the money had been returned to Sousa, and Barr again sought to collect that money.

Because there was no chance of seeking relief at the State level, Sousa filed the instant action on November 26, 2021. In the original Complaint, Sousa was seeking purely prospective relief against the Circuit Court and Willberg. [See, Dkt. # 1 at ¶¶ 102-105, p. 21; see also, Dkt. # 1-6]. The reason any and all relief sought at that time was "prospective" was because Sousa had not yet been forced to pay the $12,338.00 sanction imposed in the July 30 Order.

On November 30, 2021, Sousa filed a motion to stay the State Court proceedings in Fairfax pending the outcome of this federal case. Sousa requested that the motion to stay be heard on or before December 30, 2021. For 16 days, Judge Sharp gave no word on whether a hearing would be set on Sousa's motion to stay. Finally, on December 15, 2021, Fairfax Court clerk Kim Callahan ("Callahan") sent Sousa an email stating that Judge Sharp would hear his motion to stay on the very same day he was scheduled to hear Willberg's Motion to Enforce the

July 30 Order—January 18, 2022. [See, Dkt. # 11 at p. 13; Dkt. # 13-1].

After receiving notice that Judge Sharp was refusing to hear the motion to stay in timely fashion, Sousa filed a renewed motion which was accompanied by a cover letter. [Dkt. # 13-2]. In the cover letter, Sousa made clear that if Judge Sharp did not accept the attached notice and motion and set the matter for hearing on January 6, 2022, Sousa would "have no choice but to move for a federal injunction to enjoin" the Circuit Court from enforcing the July 30 Order. [*Ibid*]. Sousa sent this filing to the Fairfax Circuit Court by overnight mail, and proof of receipt reflects that the filing was received on December 22, 2021. [Dkt. # 13-3 at pp. 2-4].

Despite having received Sousa's filings on December 22, 2021, five days later, on December 27, 2021, Sousa received a phone call from the Fairfax clerk's office informing him that they could not set his renewed motion for a hearing on January 6, 2022, because his motion was not received by the Court until December 27, 2021. Shortly after receiving this call from the clerk, Sousa wrote an email to Callahan which recounted the nature of the phone call:

> About an hour ago, I received a call from Room 351 telling me that they just received my renewed motion to stay...[and] because they received my motion today, my requested hearing date of January 6, 2022 will need to be postponed. The problem is that I have proof that the Court received my motion on December 22. According to VA Supreme Ct Rule 4:15, a filing is deemed served when it is actually received. ***There is evidence proving that the motion was received on December 22. I have attached that evidence to this email.*** Therefore, assuming the motion is heard on January 6, it would have provided the opposing party 15 days notice - thereby satisfying the 14 day notice requirement...Ms. Callahan, at every turn, ***I feel like the court is trying to play games with me[.]***

[Dkt. # 11 at p. 14; Dkt. # 13-3 (emphasis added)]

After Sousa's motion to stay was set for a January 7, 2022, hearing, Judge Sharp denied Sousa's motion on the grounds such denial "would have ***no impact whatsoever*** on the Federal Court's ability to make its own judgment based on what is before it." [Dkt. #13-6 at p. 2 (emphasis added)]. Judge Sharp also made clear that "what is before the State Court...are...issues

that are ***limited to the procedures that were undertaken to <u>enforce</u> this debt.***" [*Ibid.* (emphasis added)]. In other words, Judge Sharp would not be hearing any challenge to the July 30 Order or its constitutionality, but rather, would only decide the collection procedures were proper.

Because Judge Sharp was actively interfering with Sousa's ability to seek prospective relief in federal court, Sousa filed an emergency motion for a temporary restraining order on January 11, 2022, in this Court, seeking to maintain the status quo by enjoining enforcement of the July 30 Order pending a hearing on a preliminary injunction. [Dkt. # 11]. This Court was unable to address the motion in time, and Sousa was subsequently jailed until his elderly parents paid the sanction. [Dkt. # 28 at ¶ 121]. This Court ultimately denied the TRO. [Dkt. # 17]. In granting Willberg's motion in State Court, Judge Sharp ordered that as an outgrowth of the July 30 Order, an additional $1,305 be paid by Sousa. The final $1,305 would need to be paid on or before April 15, 2022. Sousa has not paid any of the remaining $1,305. [Dkt. # 28 at ¶ 124].

As a separate matter, after the issuance of the July 30 Order, and in the frenzy of attempting to address the suspension of his license, the loss of his ability to provide for his three children, his impending divorce, and the massive task of trying to set all of his former clients' affairs in order, Sousa mistakenly missed a court date in Fairfax. Despite having presented good cause for his failure to appear, Sousa was sentenced by another judge in Fairfax to 45 days in jail. [See, Dkt. # 28 at ¶ 123]. The 45-day jail sentence is currently on appeal before Judge Sharp.

Although Sousa has attempted to litigate the constitutional validity of the July 30 Order, every attempt to do so has been met with frustration due to a lack of standing and the the Virginia State Court's refusal to allow collateral attack of the July 30 Orser. As explained above, Sousa was never afforded the requisite due process because his right to appeal was thwarted by Judge Bernhard's extrajudicial interference.

## III.   ARGUMENTS RELATED TO FRCP 12(B)(1)

Federal Rule of Civil Procedure 12(b)(1) enables a party to move for dismissal by challenging a court's subject matter jurisdiction. [Fed. R. Civ. P. 12(b)(1); see also, *Coulter v. United States*, 256 F.Supp.2d 484, 486 n.3 (E.D. Va. 2003)]. "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." [*Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citations omitted)]. On a 12(b)(1) motion, the plaintiff need only make a *prima facie* showing of the facts on which subject matter jurisdiction is predicated. [*Cerner Middle E. Ltd. v. iCapital, LLC*, 939 F.3d 1016, 1022 (9th Cir. 2019)]. "In determining whether a *prima facie* case exists, th[e] Court must accept as true [the plaintiff's] uncontroverted allegations, and resolve in [the plaintiff's] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." [*Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004); see also, *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019)].

### (A)   BECAUSE SOUSA SEEKS PROSPECTIVE DECLARATORY RELIEF, JUDICIAL DEFENDANTS CANNOT RELY ON ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment grants sovereign immunity to the states against suits in federal court. At the same time, the Eleventh Amendment does not bar suits for prospective injunctive relief when a litigant alleges a state officer violated federal law. This remains true even if the officer was implementing state law or policy. The Supreme Court has adopted the legal fiction that in violating federal law, the officer is stripped of state authority and is thus being sued in an individual capacity. [*Ex Parte Young*, 209 U.S. 123, 159–160 (1908)]. This fiction is "accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials

responsible to the supreme authority of federal law." [*Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 105–106 (1984)]. To this end, "[t]he Eleventh Amendment does not bar relief [against state officers] that is prospective in nature and designed to ensure future compliance with federal law." [*Doe v. Cummins*, 662 F.App'x 437, 444 (6th Cir. 2016), citing *Edelman v. Jordan*, 415 U.S. 651, 666-69 (1974)].

In the FAC, the second sentence on the first page makes clear that "[w]ith respect to Defendant Chapilliquen, this action seeks retrospective declaratory relief. With respect to all other Defendants, Plaintiff seeks *prospective* declaratory relief." [Dkt. # 28 at p. 1 (emphasis added)]. In the prayer for relief, Sousa requests "[t]hat the court declare the respective rights, duties, and responsibilities of Sousa and the Defendants with respect to the July 30 Order and declare that that July 30 Order has no application to Plaintiff in this matter, and that the July 30 Order is unconstitutional, void, and invalid." [*Id.* at p. 25]. Because Sousa seeks prospective declaratory relief declaring the rights and duties of the parties with respect to enforcement of the July 30 Order and its remaining $1,305 sanction, Eleventh Amendment immunity does not apply.

As to Judicial Defendants' argument that there is no prospective relief because Sousa paid the July 30 Order in full [Dkt. # 40 at p. 8], *Sousa did not pay the sanction in full*, but even if he did, this argument holds little weight when judged against the backdrop of Judge Sharp's flagrant disregard for these ongoing federal proceedings. Specifically, Sousa made a demand for prospective declaratory relief in the Original Complaint filed on November 26, 2021, against Willberg and the Circuit Court. [Dkt. # 1]. Judge Sharp acknowledged that he was aware of this federal case. [Dkt. #13-6 at p. 2]. He further acknowledged that he would not accept any constitutional challenges to the July 30 Order in State Court. [*Ibid.*]. Nevertheless, Judge Sharp did not stay the July 30 Order and, although the July 30 Order could not be challenged on

OPPOSITION TO MOTION TO DISMISS

constitutional grounds in State Court, and was thus being challenged on constitutional grounds in federal court, Judge Sharp obtusely stated that refusing to stay enforcement in State Court "would have no impact whatsoever on the Federal Court's ability to make its own judgment based on what is before it." [*Ibid.*]. Clearly, Sharp's "reasoning" was woefully incorrect.

In sum, Sousa was forced to file the FAC to seek reimbursement for money which should never have been paid in the first place. Had Judge Sharp merely stayed a sanction which had gone unpaid for over two (2) years, Sousa would not now be seeking a judgment awarding back money which he was forced to pay in violation of his Fifth and Eighth Amendment rights.

Relief can be prospective in nature even when seeking reimbursement if, at the time of originally seeking relief, the relief being sought was intended to address an "ongoing violation of federal law" as opposed to remedying a past occurrence. [See, *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)]. Because Judicial Defendants were on notice that Sousa had a pending federal claim seeking prospective declaratory relief, and Judge Sharp took affirmative steps to try to ensure that Sousa would only be able to seek retrospective relief, this Court should not be restricted from viewing reimbursement as "prospective" in this case.

**(B)   YOUNGER ABSTENTION IS INAPPLICABLE TO THE FACTS OF THIS CASE**

The *Younger* abstention doctrine originated in the context of pending state court criminal proceedings, but it has since been applied in certain civil contexts. In deciding whether to abstain on the basis of *Younger*, the district court must look to whether (1) there is an ongoing state judicial proceeding; (2) the proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the constitutional claim advanced in the federal lawsuit. [*Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008)]. These elements are not to be balanced; each element must be satisfied on its own. [*See, e.g., AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148 (9th Cir. 2007) (explaining that "when

-13-

each of an abstention doctrine's requirements are not strictly met, the doctrine should not be applied.")]. As explained below, Defendants cannot satisfy one—let alone all three—of the factors which would support the application of *Younger* to Sousa's claims.

### 1. There is No "Ongoing" State Proceeding Because Sousa Is Not a Party to the State Court Action and His Interests Are Not Intertwined with the State Court Defendant

Sousa is not a party to the State Court case from which the July 30 Order emanated. It is well-settled that a federal court may not abstain on the basis of *Younger* when the federal plaintiff is not a party to the state court action. Indeed, "nowhere in the *Younger* line of cases is it even intimated that, while a state [proceeding] is pending, a federal court, in an appropriate case between persons not parties to the state action, may not address issues of federal law that are simultaneously being litigated in state court. Rather…a plaintiff's ability to sue to vindicate his rights in federal court is not affected by the simultaneous pendency of a state [proceeding] against someone else (whether or not the state defendant is a litigant in a federal action)." [*United State v. Composite State Board of Medical Examiners*, 656 F.2d 131, 137 (5th Cir. 1981)]. For this reason, "abstention bars prospective relief to a person not a party to the state action only in the extraordinary situation in which the interests of the state defendant and the federal plaintiff are so 'intertwined' as to be considered identical. But neither a "common interest in the outcome of federal litigation nor a common effort in pressing it requires abstention[.]" [*Ibid.*, citing *Robinson v. Stovall*, 646 F.2d 1087, 1090 (5th Cir. 1981)].

In this case, Sousa is not a party to the State litigation. Nor are Judge Bernhard, Judge Sharp, or the Circuit Court. Furthermore, Sousa's interests are not intertwined with the "state defendant's" interests. The "state defendant" is Sousa's former client—Sara Chapilliquen. Despite being her former attorney in the State litigation, Sousa and Sara do not share identical interests, nor could they, as Sousa was not married to Sara; he is not related to Sara; and Sousa's

OPPOSITION TO MOTION TO DISMISS

obligations to the Rules of Professional Conduct prohibited him from taking a pecuniary or tangible interest in a divorce case.

Because Sousa was not a party to the State litigation from which the July 30 Order emanated, and because Sousa's interests are not "identical" to Sara's interests, *Younger* abstention simply cannot apply.

### 2.   *The Commonwealth Has No Ongoing Substantial Interest in the Underlying State Court Action*

The second *Younger* element is satisfied when "the State's interests in the [ongoing State] proceeding [is] so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." [*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987)]. According to Defendants, failure to apply *Younger* in this case would be offensive to comity because the Commonwealth has a "substantial interest both in domestic relations matters and in regulating the practice of law." [Dkt. # 40 at p. 10]. While both these interests are important, in this particular case, they are "not the type of 'important state interest[s]' that animate[] the *Younger* abstention doctrine." [*Roden*, 495 F.3d at 1149–1150 (explaining that a state's interest in enforcement of a *single state court judgment is not sufficiently important* to satisfy *Younger's* second threshold element).].

To put it bluntly, the enforcement of an order which imposes sanctions against a non-party to a divorce case in violation of the Fifth and Eighth Amendment has nothing to with the Commonwealth's interests in either "domestic relations matters" or "regulating the practice of law." The domestic relation matter—which involves a divorce and distribution of assets—is over. The continued enforcement of an order against Sousa—a nonparty to that divorce—has no effect on the Commonwealth's interests in "domestic relations matters." Likewise, the "regulation of the practice of law" is also over by virtue of Sousa's disbarment. The continued

enforcement of an unconstitutional civil sanctions order ***against a non-attorney*** has nothing to do with regulating the practice of law. Moreover, even if Sousa violates the July 30 Order, the only time the Commonwealth would have any interest in contempt proceedings is when the contempt is criminal in nature. [*See, e.g., Ex Parte Grossman*, 267 U.S. 87, 111 (1925) (Criminal contempt "imposed to punish the contemnor for violating the dignity of the court and the king, ***in the public interest***.") (emphasis added).]. There is no criminal contempt here.

Because the Commonwealth's interest in this case is not substantial or important enough to justify the application of *Younger* to Sousa's claims, Defendants fail to meet the second element of *Younger*.

### 3.  There is No Adequate State Forum

In order for *Younger* abstention to apply, there must be an adequate opportunity for the plaintiff to raise his constitutional claims in an ongoing state proceeding. If the state proceedings are pending, constitutional issues must be raised there "unless it plainly appears that this course would not afford adequate protection." [*Younger v. Harris*, 401 U.S. 37, 45 (1971)]. That is to say, *Younger* abstention presumes that state courts can be trusted to uphold civil rights. In this case, there are four (4) reasons why the State Courts of Virginia are an inadequate forum.

### (a)  Judge Bernhard's Extrajudicial Interference Prevented Sousa from Having an Adequate Opportunity to Appeal

Pursuant to Va. Sup. Ct. R. 1:1, absent a perfected appeal, a judgment is final and conclusive and cannot be collaterally attacked in a contempt proceeding. [See, *Fisher v. Salute*, 51 Va.App. 293, 301, fn. 4 (2008), citing *Rook v. Rook*, 233 Va. 92, 95 (1987)]. As alleged in the FAC, while he was presiding over the State Court case, Judge Bernhard conducted an extrajudicial investigation into Sousa then submitted the findings of that "investigation" to the VSB as bar complaint ***"for the purpose of interfering with Sousa's ability to properly appeal***

Judge Bernhard's unconstitutional July 30 Order." [Dkt. # 28 at ¶¶ 103; 105 (emphasis added); see also, Sousa Dec. at ¶ 2; Exhibit 1]. To be sure, if the bar complaint had a legitimate basis, that would be one thing. But the bar complaint was merely a pretext to interfere with Sousa's ability to appeal Judge Bernhard's baseless sanction order.

After Judge Bernhard's lodging of the bar complaint, the VSB subpoenaed Sousa to turn over all documents related to his representation of Sara in the State Court case. When Sousa refused on the grounds of privilege because the action and appeal were still pending, the VSB suspended Sousa's law license. [Dkt. # 28 at ¶ 112]. Because Sousa was no longer an attorney, he was required to file an appeal in his own name in order to address the sanctions directed at Sousa personally. But by the time his law license was suspended, the time limit to file a notice of appeal on Sousa's own behalf had lapsed. Sousa thus had no opportunity for direct appeal. [*Id.* at ¶¶ 114-115]. Without the opportunity to perfect the appeal of the July 30 Order or the August 8, 2019, Final Order, the judgment became final and could no longer be attacked in a contempt proceeding.

> (b) Judge Sharp Has Made Clear that the State Court Will Not Review the
> Constitutionality of the July 30 Order

Judge Sharp was aware that Sousa was seeking federal review of the July 30 Order's constitutionality. Judge Sharp also (1) stated that Sousa could not challenge the July 30 Order's constitutionality in State Court; (2) knew that Sousa was currently seeking to challenge the constitutionality of the July 30 Order in federal court; but (3) refused to issue a stay of the State Court proceedings even though he was fully aware that continuing to impose the sanctions in the July 30 Order could be a violation of Sousa's constitutional rights.

To his extremely limited credit, the blame may not be entirely on Judge Sharp, as the law-of-the-case doctrine becomes binding when a trial court order goes unchallenged in an

appeal and later remand of the case. [See, *Lockheed Information Management Systems v. Maximus*, 259 Va. 92, 108 (2000)]. In this case, the July 30 Order clearly merged into the divorce decree. [See, Dkt. # 40-1 at pp. 6-7]. Accordingly, Judge Sharp's view is he lacks jurisdiction to review of the constitutionality of the July 30 Order. But because a challenge to the July 30 Order's constitutionality cannot be raised in the pending state civil action, *Younger* abstention is inapplicable. [*See, e.g., Habich v. City of Dearborn*, 331 F.3d 524 (6th Cir. 2003) (*Younger* abstention inappropriate because plaintiff would have no opportunity to raise her constitutional claims in pending state proceedings).].

    (c) <u>By Defendants' Own Admission, Sousa Lacks an Adequate State Forum Because the Statute of Limitations Has Lapsed</u>

    On the one hand, Defendants submit that *Younger* abstention applies because "Sousa will continue to have adequate opportunities to raise his constitutional challenges in state court." [Dkt. # 40 at p. 10]. This is patently untrue as explained directly above.

    On the other hand, Defendants also argue that Sousa filed this action "more than three months after the limitations period[.]" [*Id.* at p. 12]. As discussed in §IV(A), *infra*, the statute of limitations on Sousa's claims would have run on December 14, 2021. But if Sousa were to now attempt to file this action at the State level, he would be outside the statute of limitations.

    (d) <u>The Virginia State Court Openly Harbors Bias Against Sousa</u>

    An opportunity to litigate the federal claims in the course of a pending state proceeding is appropriate when the state forum is biased. [See, *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973)]. If deferring to a biased state forum would cause irreparable injury to the federal plaintiff, abstention is inappropriate even if judicial review is available. [*See, e.g., Perez v. Ledesma*, 401 U.S. 82, 85 (1971) (*Younger* abstention doctrine is inapplicable "in cases of proven harassment...undertaken by state officials in bad faith...and perhaps in other extraordinary

OPPOSITION TO MOTION TO DISMISS

circumstances where irreparable injury can be shown"); *Hi Tech Trans, LLC v. New Jersey*, 382 F.3d 295, 305 (3d Cir. 2004) (*Younger* abstention is not appropriate if "extraordinary circumstances exist such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted").]. The record in this case is replete with evidence establishing a pervasive bias against Sousa in the State Court.

*First*, Judge Bernhard penned the July 30 Order which imposed sanctions against Sousa in violation of Sousa's Fifth and Eighth Amendment rights. In doing so, Judge Bernhard lied in the July 30 Order by accusing Sousa of lying, but Judge Bernhard intentionally failed to cite to any portion of the transcript from the hearing—which would have categorically demonstrated that Sousa never lied to anyone at any time. [Dkt. # 28 at ¶¶ 98, 101; Dkt. # 1-5].

*Second*, after issuing the July 30 Order, but while the case was still pending before him, Judge Bernhard conducted an extrajudicial investigation into Sousa, and then sent the "findings" of that investigation to the VSB as a "bar complaint" against Sousa for the purpose of interfering with Sousa's ability to properly appeal Judge Bernhard's unconstitutional July 30 Order." [Dkt. # 28 at ¶ 105; see also, Sousa Dec. at ¶ 2; Exhibit 1]. If the bar complaint had legitimate basis, that would literally change the entire story. But the bar complaint was a pretext to interfere with Sousa's ability to appeal the erroneous July 30 Order.

*Third*, even though the Virginia Supreme Court knew that Judge Bernhard had repeatedly demonstrated a willingness to conduct extrajudicial investigations into parties appearing before his Court, when an instance of Judge Bernhard's improper behavior resulted in an appeal to the Virginia Supreme Court, the Virginia Supreme Court would not even mention Judge Bernhard by name, and despite acknowledging the existence of an extrajudicial investigation, the Virginia Supreme Court did not in any way admonish this behavior. [Sousa Dec. at ¶¶ 3, 4; Exhibits 2, 3].

*Fourth*, the entire judiciary of the Circuit Court of Fairfax County recused themselves from any matters involving Sousa precisely because there was an actual, or reasonable perception, that the judiciary held a bias against Sousa. [See, Dkt. # 28 at ¶¶ 5, 121].

*Fifth*, after the filing of this case, Sousa moved in the State Court to stay enforcement of the July 30 Order pending the outcome of this case. Judge Sharp refused to hear the motion in a timely manner, and Sousa renewed his motion to stay and attached a letter which asked Judge Sharp to "[p]lease" stop "playing games with my constitutional rights." [Dkt. # 13-2 at p. 1].

*Sixth*, instead of setting Sousa's motion for a hearing, the Fairfax Circuit Court clerk jumped in and blatantly attempted to interfere with Sousa's right to be heard on the basis of a verifiable lie, namely, that they could not set his renewed motion for a hearing on January 6, 2022, because his motion was not received by the Court until December 27, 2021. The record demonstrates that, contrary to the Fairfax Court's representations, the Court received Sousa's filings on December 22, 2021. [Dkt. # 13-3].

*Seventh*, despite knowing that (1) Sousa's constitutional rights were at stake; (2) that the State Court would not hear any arguments which challenged the July 30 Order's constitutionality; and (3) that this case was currently pending before this Court for the purpose of addressing the alleged violations of Sousa's constitutional rights, Judge Sharp imposed the sanctions in the July 30 Order anyway and obtusely predicated his refusal to stay enforcement on the fanciful belief that it "would have no impact whatsoever on the Federal Court's ability to make its own judgment based on what is before it." [Dkt. #13-6 at p. 2 (emphasis added)].

*Eighth*, after the issuance of the July 30 Order, and with all the well-known personal and professional predicaments Sousa was facing, a separate judge in the Fairfax Court sentenced Sousa to 45 days in jail for a simple missed court date—this despite the fact Sousa worked in that

Court every day and had also presented good cause for his nonappearance.

As stated above, *Younger* is based on the presumption that federal courts should not interfere with state courts because state proceedings can sufficiently protect constitutional rights. However, when it becomes clear that "state instrumentalities [can] not protect federally created rights," *Younger* is inapplicable. [*Mitchum v. Foster*, 407 U.S. 225, 242 (1972)]. With respect to Sousa's claims, applying *Younger* would be tantamount to throwing a lamb to the wolves. Sousa cannot get relief on the state level because over the course of two and a half years, the judiciary of Virginia has been totally unreceptive to Sousa's claims regardless of their merit. Whether it be attempted appeals, new actions, mandamus, or prohibition, Sousa's requests for relief have repeatedly been rejected at every level. Sousa does not stand a chance of obtaining relief in Virginia State Court. Eight verifiable instances of bias and misconduct confirm that.

## (C) THE ROOKER-FELDMAN DOCTRINE DOES NOT APPLY BECAUSE SOUSA WAS NOT A PARTY TO THE STATE COURT CASE

The Rooker-Feldman doctrine will usually not bar actions by prior nonparties even if they would be in privity with a state-court loser. [*Lance v. Dennis*, 546 U.S. 459, 466 (2006) (per curiam)]. Moreover, for Rooker to apply, the subsequent federal action must be brought by the party who lost in state court. [*Hulsey v. Cisa*, 947 F.3d 246, 252 (4th Cir. 2020)]. Similarly, because the doctrine applies only when federal court proceedings are brought by a state court loser, it does not apply when the proceedings were dismissed without an adjudication on the merits. [*Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1074 (11th Cir. 2013)]. As explained in § III(B)(1), *supra*, Sousa was not a party to the State Court litigation, and he was not in privity with the State Court loser. Accordingly, Rooker-Feldman abstention does not apply.

**(D)   JUDICIAL IMMUNITY DOES NOT APPLY TO SOUSA'S CIVIL RIGHTS CLAIMS**

### *1.   Judicial Immunity is Inapplicable to Prospective Declaratory Relief*

In 1984, the Supreme Court held that absolute judicial immunity does not extend to actions for declaratory or injunctive relief. [See, *Pulliam v. Allen*, 466 U.S. 522, 540-542 (1984)]. Twelve years later, Congress enacted the Federal Court Improvement Act of 1996, 110 Stat. 3847, which bars injunctive relief against a judicial officer under §1983 "for an act or omission taken in such officer's judicial capacity…unless a declaratory decree was violated or declaratory relief was unavailable." [42 U.S.C § 1983]. "Thus, declaratory relief is limited to prospective declaratory relief." [*Justice Network Inc. v. Craighead Cty.*, 931 F.3d 753, 764 (8th Cir. 2019)]. "[D]etermining whether the declaratory relief is available…turns on whether the judge can properly be named as a defendant in light of abstention doctrines, the Rooker-Feldman doctrine, and the Article III mootness doctrine." [*Cooper v. Rapp*, 702 F. App'x 328, 333 (6th Cir. 2017)].

Declaratory relief is available in this case because, as explained in §§ III(B)-(C), *supra*, none of the abstention doctrines apply. Moreover, Sousa requested prospective declaratory relief in the form of an Order which declares "the respective rights, duties, and responsibilities of Sousa and the Defendants with respect to the July 30 Order and [to] declare that that July 30 Order has no application to Plaintiff in this matter, and that the July 30 Order is unconstitutional, void, and invalid[.]" [Dkt. # 28 at p. 25]. In the event that Sousa's request for prospective declaratory relief is unavailable, Sousa requested that Defendants Bernhard, Sharp, the Circuit Court of Virginia, and all others be enjoined from enforcing against Sousa the sanctions issued in the July 30 Order. [*Id.* at p. 26]. Because Sousa is seeking prospective declaratory relief related to the continued attempted enforcement of the July 30 Order, judicial immunity does not serve to bar Sousa's claims.

## 2. *Judicial Immunity is Inapplicable When a Judicial Officer Engages in Extrajudicial Interference of the Right to Seek Appellate Review*

The history of the doctrine of judicial immunity shows that it arose in response to the creation of the right of appeal. In the tenth and eleventh centuries in England when no right of appeal existed, losing litigants could challenge unfavorable judgments on the ground that they were false. [Charles Geyh, *Judicial Conduct and Ethics* § 12.01 (Bender 2020), citing Marvin Comisky & Philip C. Patterson, *The Judiciary – Selection, Compensation, Ethics, and Discipline* at p. 233 (Praeger 1987)]. The litigant could then seek nullification of a false judgment, as well as a fine, known as an amercement, against the judge who had rendered it. As the right to appeal became available, it replaced amercements against judges, and gradually, the doctrine of judicial immunity developed. [*Ibid.*] It is therefore said that, "[t]he ban against suing judges is…justified by the availability of other safeguards against judicial error, especially the right to appeal." [*K.D. v. Bozarth*, 313 N.J.Super. 561, 568 (Super.Ct.App.Div. 1998)].

Judicial immunity does not apply—and thus does not bar a suit for injunctive relief—when "the action in question is not judicial in nature, as when the judge performs an administrative, legislative, or executive act." [*Huminski v. Corsones*, 396 F.3d 53, 75 (2d Cir. 2005)]. A judge's actions will only be considered as occurring in the performance of an "official duty" where the judge's act is a function normally performed by a judge. [See, *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)].

Here, Judge Bernhard's independent investigation, in which he apparently stepped into the role of amateur sleuth, was clearly outside of a judge's "official duties." The reason this was "clearly" outside Judge Bernhard's official duties is because the Commentary to Canon 3(B)(7) of the Canons of Judicial Ethics make clear that "a judge must not independently investigate facts in a case and must consider only the evidence presented." "The prohibition against a judge

-23-

investigating the facts in a matter extends to information available in all mediums, including electronic." [*Carpenter v. United States*, 144 A.3d 1141, 1150, fn. 17 (D.C. 2016)]. Consequently, federal courts tend to view a judge who conducts an extrajudicial investigation into a lawyer as "suggest[ing] a vendetta." [*United States v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006); see also, *State v. McCrary*, 676 N.W.2d 116, 125 (S.D. 2004) ("A judge simply cannot be both a judge and [an attorney] searching out facts favorable to [a party] without abandoning his or her judicial neutrality."); *Disciplinary Proceedings Against Piontek*, 927 N.W.2d 522 (Wis. 2019) (Wisconsin judge was suspended after he imposed sentence in a drug case grounded on the mistaken view derived from an independent internet investigation that the defendant was not a licensed nurse as she had claimed).].

Based on the facts alleged in the FAC, Judge Bernhard did not merely conduct an extrajudicial investigation of Sousa while Sousa was representing a client in a matter pending before Judge Bernhard, but he did so while concurrently penning an opinion sanctioning Sousa for conduct which, on the face of the July 30 Order itself, was not sanctionable conduct at all. Indeed, Judge Bernhard sanctioned Sousa under Va. Sup. Ct. R. 4:12(d)—which can only apply "when a party *completely fails to respond to discovery* requests, such as not appearing at a deposition after proper service or not responding at all to a set of interrogatories." [*Brown v. Black*, 260 Va. 305, 313 (2000) (emphasis added)]. However, the July 30 Order admits that Sousa *did respond* to discovery with objections. [See, Dkt. # 28 at ¶ 91]. Judge Bernhard also sanctioned Sousa for "lying" to and "not updating" the court when, by denial of Sousa's motion for continuance, he had no further duty to update the Court. [See, e.g., *Oxenham*, 241 Va. at 287]. More importantly, the trial transcript categorically demonstrates that Sousa was scrupulously honest and that it was Judge Bernhard who lied. [*Id.* at ¶¶ 100-101].

Even though Judge Bernhard's sanctions against Sousa were factually frivolous and facially unconstitutional, Judge Bernhard then used those baseless sanctions as a pretext to send a complaint to the VSB for the purpose of interfering with Sousa's ability to appeal the unconstitutional and legally erroneous July 30 Order. [Dkt. # 28 at ¶ 105]. Judge Bernhard's unlawful intent to interfere with Sousa's right to appeal is laid bare by the contents of his letter which urges the VSB to conduct an immediate, "*early*" investigation of Sousa and his law practice. [Sousa Dec. at ¶ 2; Exhibit 1]. For the reasons already discussed, and as alleged in the FAC, Sousa was never afforded the opportunity to appeal Judge Bernhard's unconstitutional July 30 Order as a direct result of Judge Bernhard's interference. [Dkt. # 28 at ¶¶ 103-120].

The Supreme Court has instructed that a federal court's equitable authority remains cabined in the traditional powers exercised by English courts of equity. [*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 840 (9th Cir. 2020), citing *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 104-107 (1945)]. Given that the Supreme Court has instructed that a federal court's equitable authority remains cabined in the traditional powers exercised by English courts of equity, and that those courts of equity, prior to the advent of appellate proceedings, allowed for losing litigants to seek nullification of a false judgement against the judge who rendered it, this Court should not permit Judge Bernhard to invoke judicial immunity when the facts show that Judge Bernhard intentionally and maliciously interfered with Sousa's right to appeal. Without the right or ability to appeal, the traditional powers exercised by English courts allowed for nullification of a false judgement against the judge who rendered it. Because Judge Bernhard interfered with Sousa's ability to appeal at the state level, this Court's inherent equitable authority should allow for Sousa to seek relief against Judge Bernhard.

**(E)   THE "CIRCUIT COURT" SHOULD BE ALLOWED TO SERVE AS A PLACEHOLDER UNTIL SOUSA CAN ASCERTAIN THE PERSON(S) TO BE NAMED**

The FAC alleged that the Circuit Court "is a local unit of government operating and existing under the Constitution and the laws of the Commonwealth of Virginia." [Dkt. # 28 at ¶ 2]. After Sousa filed this case, the Circuit Court apparently would not accept service. Consequently, the U.S. Marshal's Service issued an alias summons for the Circuit Court. [See, Dkt. # 25]. Given Sousa's naming of the Circuit Court and the refusal by the Virginia Attorney General to identify the proper person to stand in the shoes of the Circuit Court, this Court should not dismiss the Circuit Court at this time. Admittedly, Sousa acknowledges that the Circuit Court may be an improperly named party, but there certainly must exist a person who can be swapped into the place of the Circuit Court. For this reason, the Circuit Court should be considered a "Doe Defendant" at this stage of the proceedings. [*See, e.g., Thorne v. Hale*, 2009 U.S.Dist.LEXIS 25938, at *33 (E.D.Va. 2009)]. Furthermore, the Virginia General Assembly only grants sovereign immunity to the Commonwealth and its entities for conduct which is ***not in bad-faith, grossly negligent, or which constitutes willful misconduct.*** [*AGCS Marine Ins. Co. v. Arlington Cty.*, 293 Va. 469, 484, fn. 9 (2017)]. Clearly, the conduct alleged in the FAC, and the evidence on this record, constitutes bad faith and willful misconduct which would not entitle the Circuit Court to immunity.

## IV.   ARGUMENTS RELATED TO FRCP 12(b)(6)

The motion to dismiss methodology requires the court to assume all well-pled facts to be true and to draw all reasonable inferences in favor of the non-moving party. [*Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013)]. When reading the complaint, the court must not read each allegation in isolation, but instead must "read the complaint as a whole." [*Taubman Realty Group L.P. v. Mineta*, 198 F.Supp.2d 744, 760 (E.D. Va. 2002)]. The motion to dismiss only

-26-

tests "the sufficiency of the complaint…it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." [*Id.* at 761]. "A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any set of facts which could be proved in support of [the] claim." [*McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 328 (4th Cir. 1996) (citations omitted)].

### (A)   AS A RESULT OF VIRGINIA'S COVID EMERGENCY JUDICIAL ORDERS, SOUSA HAS TIMELY FILED THE INSTANT ACTION

According to Defendants, the statute of limitations has run on Sousa's claims. Defendants are wrong. By Defendants' calculation, Sousa's right to assert this action expired on August 8, 2021. However, Defendants' argument fails to mention that on April 22, 2022, the Virginia Supreme Court, in response to the perceived emergency posed by COVID-19, issues a "Third Order Extending the Judicial Emergency" which "went on to define tolling as '[t]o suspend or stop temporarily.'" [*Ceriani v. Dionysus, Inc.*, 2022 U.S.Dist.LEXIS 73499, at *5 (E.D. Va. 2022)]. In a subsequent "Seventh Judicial Order Extending the Judicial Emergency," the Order stated that the tolling period between "March 16, 2020, through July 19, 2020…shall not be counted for purposes of determining statutes of limitation or other case related deadlines." [Id. at * 12].

In *Ceriani*, plaintiff filed a lawsuit on August 27, 2021, alleging injuries from a slip and fall which occurred on July 5, 2019. Although Ceriani's statute of limitations ordinarily would have expired on July 5, 2021, the Eastern District of Virginia found that Virginia's pandemic judicial orders tolled Ceriani's statute of limitations and allowed her additional time to file. [*Id.* at *11 ("Upon this Court's review of the Emergency Orders, the Court agrees with Plaintiff and finds that the Emergency Orders do operate to toll Plaintiff's statute of limitations.")].

Assuming Defendants are correct, and Sousa's claims arose on August 8, 2019, and

expired on August 8, 2021, the Virginia Emergency Judicial Orders extended Sousa's statute of limitations by 126 days—which would be December 13, 2021. Sousa originally filed this action on November 26, 2021. [Dkt. # 1]. Sousa's filing of this action was therefore timely.

**(B) SOUSA HAS ADEQUATELY ALLEGED A VIOLATION OF THE FIFTH AND EIGHTH AMENDMENTS**

According to Defendants, "[t]he FAC pleads that Sousa had both notice and opportunity to be heard before the circuit court imposed the $11,000 sanction" because he submitted the trial transcript showing he "had an extensive opportunity to be heard before the Circuit Court entered the Final Order of Divorce." [Dkt. # 40 at p. 13].

There can be no question that Va. Sup. Ct. R. 1:18B is intended to serve as a statutory embodiment of the Fifth Amendment's Due Process Clause by articulating precisely what constitutes "reasonable notice" with respect to motions in limine. Pursuant to that rule, absent leave of court, any motion in limine which requires argument exceeding five minutes must be duly noticed and heard before the day of trial. [Dkt. # 28 at ¶ 71].

In the FAC, Sousa alleges that because Willberg's motion in limine required argument exceeding 5 minutes, the motion was required to have been properly noticed and heard before the actual day of trial. However, the motion was neither properly noticed, nor heard before the day of trial. Instead, the motion was heard during the actual trial itself. More importantly, the motion did not seek attorney's fees from Sousa, but from Sousa's client, Sara. [Dkt. # 28 at ¶ 73].

In short, Sousa did not have time to provide a written response to the motion; did not know he would be arguing the motion; and the motion did not seek sanctions against Sousa, nor did he have any knowledge that sanctions would be imposed against him. Because Sousa was not provided adequate notice in accordance with the minimum requirements of Va. Sup. Ct. R. 1:18B, the July 30 Order was issued in derogation of Sousa's Constitutional right to due process.

Moreover, Judge Bernhard's extrajudicial interference, as alleged in detail at ¶¶ 103-120 of the FAC, establishes the existence of additional actionable due process violations.

Next, and without providing any concrete examples, Defendants assert that "[as] shown by the FAC and the exhibits submitted by Sousa, a $11,000 sanction is not grossly disproportional to the gravity of Sousa's conduct throughout the divorce case. Thus, Sousa fails to state a claim for a violation of the Eighth Amendment excessive fines clause." [Dkt. # 40 at p. 13]. Defendants' argument is belied by the FAC's allegations and the July 30 Order itself.

*First*, Judge Bernhard sanctioned Sousa under Rule 4:12(d) for failing to respond to discovery *other than with objections*. [Dkt. # 28 at 91; Dkt. # 1-5 at p. 5]. In other words, Judge Bernhard explicitly acknowledged that Sousa *did respond* to discovery with objections. Yet, Rule 4:12(d) sanctions are only applicable when an attorney completely fails to serve answers or objections to interrogatories. [*Id.* at ¶ 89, citing *Brown*, 260 at 313 ("[R]emedies of Rule 4:12(d) only apply when a party *completely fails* to respond to discovery requests."). Therefore, because Sousa did not completely fail to respond to discovery, Judge Bernhard's sanctions are obviously violative of the Excessive Fines Clause because Sousa cannot be sanctioned for "completely" failing to serve answers or objections to interrogatories when, by Judge Bernhard's own admission, Sousa responded to discovery with objections. The fine is "excessive" because Sousa acted in the exact manner necessary to avoid a sanction under Rule 4:12(d).

*Second*, Judge Bernhard claimed that Sousa affirmed to the Court that he had supplemented discovery and needed a continuance to search for the discovery and bring it to court. Judge Bernhard denied the continuance. [Dkt. # 28 at ¶ 96]. While the motion for a continuance was denied, the Court did allow Sousa to provide…substantiation post-trial and imparted that in such event, the Court might consider reopening the evidence. No such post-trial

filing was forthcoming, and the...Court concludes that Sousa was untruthful to the Court in support of his motion and thus stands in violation of Virginia Code§ 8.01-271.1." [*Ibid.*]. Sousa alleged, however, that "Code 8.01-271.1 imposes no continuing duty upon a lawyer to update his pleadings in light of any new findings. Given that Judge Bernhard acknowledged denying the motion for continuance, there was no continuing duty for Sousa to update Judge Bernhard. For this initial reason, Judge Bernhard's sanctions have no reasonable connection to Sousa's purported culpability.

Additionally, Bernhard lied when he states that Sousa represented to the Court that he had served updated interrogatories. The record shows that Sousa clearly stated "I don't recall and I don't like to make misrepresentations, and I don't like to lead the Court wrong, so what I do like to ask is a little leeway" to return to his office to make sure the document was there. [Dkt. # 28 at ¶ 98]. Judge Bernhard is not permitted to make up his own facts, disregard the explicit statements of counsel, and then accuse counsel of "lying." Judge Bernhard's conduct is one of the most frightening things imaginable--that a person entrusted to serve as a neutral arbiter of the facts no longer feels it prudent to take stock of all the evidence, but instead chooses to ignore any evidence which runs counter to their predetermined, personally motivated outcomes. Moreover, contrary to Judge Bernhard's fanciful statement that Sousa acted "in derogation of two court orders," Sousa was never the subject of any court order. [Dkt. # 28 at ¶ 99]. Because Sousa alleged facts demonstrating that the sanctions imposed had no reasonable connection to Sousa's culpability, Sousa has properly stated a claim for a violation his Eighth Amendment rights.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion should be denied. To the extent that this Court finds any of Sousa's claims to be improperly pled, Sousa respectfully requests leave to amend to more specifically point out the factual bases supporting his right to relief.

-30-
OPPOSITION TO MOTION TO DISMISS

## VI.   STATEMENT ON ORAL ARGUMENT

Although Defendants have chosen to waive a hearing on their motion to dismiss, if this Court believes that a hearing would assist in clarifying any legal or factual issues, Sousa would be honored to appear for oral argument.

Date: _September 30th, 2022_

_Randall Sousa_
Randall Sousa
Pro Se Plaintiff